FILED
**United States Court of Appeals**
**Tenth Circuit**

**June 12, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

SARAH LIEBERENZ, individually and as
personal representative of the Estate of
Jackson Maes, deceased,

     Plaintiff-Appellee/Cross-Appellant,

v.

KENNETH WILSON, in his individual
capacity,

     Defendant-Appellant/Cross-
     Appellee,

BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY
OF SAGUACHE, COLORADO, in its
official capacity; SAGUACHE COUNTY
SHERIFF'S OFFICE, a governmental
entity; DAN WARWICK, Sheriff of
Saguache County, in his official capacity;
ELKE WELLS, in her individual capacity;
SHELBY SHIELDS, in her individual
capacity,

     Defendants/Cross-Appellees,

and

MIGUEL MACIAS, in his individual
capacity,

     Defendant,

FORMER CORRECTIONS OFFICIALS,
Dan Pacholke, Dick Morgan, Eldon Vail;
CATO INSTITUTE,

Nos. 23-1055 & 23-1075
(D.C. No. 1:21-CV-00628-NYW-NRN)
(D. Colo.)

Amicus Curiae.

---

**ORDER AND JUDGMENT**[*]

---

Before **McHUGH**, **MURPHY**, and **FEDERICO**, Circuit Judges.

---

On November 16, 2019, Deputy Elke Wells arrested Jackson Maes and brought him to the Saguache County Jail ("SCJ"). Mr. Maes was intoxicated at the time of his arrest. Jail officials placed him in an individual cell at the SCJ. After stating within earshot of three officials that he was "trying to kill [him]self right now" and repeatedly striking his head against the wall, Mr. Maes hanged himself with the privacy curtain in his cell. Jail officials found him dead the following morning.

Mr. Maes's mother, Sarah Lieberenz, sued jail officials, along with other individuals and entities, as a personal representative on behalf of Mr. Maes's estate. Relevant to this appeal, she brought four claims pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to serious medical needs in violation of the Fourteenth Amendment against Captain Kenneth Wilson (as both an individual and a supervisor), Deputy Wells, and dispatcher Shelby Shields. Captain Wilson, Deputy Wells, and Ms. Shields all moved for summary judgment, invoking the doctrine of qualified

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

immunity. The district court denied summary judgment as to Captain Wilson but granted it as to Deputy Wells and Ms. Shields. Captain Wilson timely appealed the district court's denial of qualified immunity with respect to both the individual and supervisory liability claims against him. Ms. Lieberenz timely filed a cross appeal, challenging the district court's grant of qualified immunity to Deputy Wells and Ms. Shields.

We affirm the district court's denial of qualified immunity to Captain Wilson and dismiss Ms. Lieberenz's cross appeal for lack of jurisdiction.

## I.    BACKGROUND

### A.    *Factual History*

**1.    Saguache County Jail**

The SCJ is a detention facility with four cells and one holding tank designed for inmates on suicide watch, who are intoxicated, or who are displaying behavioral problems. During normal working hours, the SCJ is staffed by two individuals: a jailer and a dispatcher. The dispatcher's responsibilities include "handling phone calls, coordinating responses for road deputies, and entering information into the County's computer-aided dispatch system." App. Vol. III at 58. The jailer's responsibilities include "monitoring the inmates and conducting physical checks of the cells every hour." *Id.* A single employee sometimes acts as the jailer and dispatcher during the overnight shift.

The SCJ has a suicide prevention policy requiring that potentially suicidal inmates be placed in the holding tank with nothing but a suicide suit and a mattress. The policy also requires jailers to conduct camera checks every ten minutes and in-person checks every twenty minutes on suicidal inmates.

3

**2.     Mr. Maes's Arrest, Detention, and Death**

On November 16, 2019, Deputy Wells of the Saguache County Sheriff Department received a report of an intoxicated individual from a concerned citizen. When Deputy Wells located Mr. Maes, he was losing his balance and smelled of alcohol. Deputy Wells arrested Mr. Maes based on an unrelated warrant for failure to appear for a traffic offense and transported Mr. Maes to the SCJ. Ms. Shields and Miguel Macias were both on duty at the SCJ on the evening of November 16, the former as the dispatcher and the latter as the jailer. Captain Wilson was also at the SCJ that evening, "at least in part, in an effort to fix the dispatcher's broken radio console." *Id.* at 60.

When Deputy Wells and Mr. Maes arrived at the SCJ, Ms. Shields "observed that [Mr. Maes] appeared intoxicated and high." *Id.* The parties dispute Mr. Maes's demeanor at the SCJ, namely whether he was "funny, lighthearted, [and] cordial," or "gloomy, intoxicated, [and] inflicting self-harm using his head." *Id.* at 77–78 (alterations in original). Captain Wilson, Deputy Wells, and Mr. Macias assisted Mr. Maes into his jail uniform and placed him in an empty cell. Mr. Maes was placed in a cell, rather than the tank, because the latter was already occupied by another inmate with behavioral problems.

Approximately twelve minutes after he was placed in the cell, Mr. Maes "began making loud noises by banging into a metal wall in the cell." *Id.* at 60. Captain Wilson, Deputy Wells, and Mr. Macias reentered the area around the cell and, per the record,

observed Mr. Maes striking his head against the cell wall.[1] Deputy Wells advised

Mr. Maes to lie down and "get some rest," to which Mr. Maes responded, "I'm trying to

kill myself right now." *Id.* at 60–61. Captain Wilson replied, "You're trying to kill

yourself right now?" and, after receiving no response, left the area around the cell. *Id.* at

61. At that time, Captain Wilson believed Mr. Maes was eligible for treatment at a detox

center and stated "something more" should be done to treat Mr. Maes. *Id.* at 77.

Mr. Macias then conversed with Mr. Maes about how to bond out of jail, whether

Mr. Maes could obtain food, and whether Mr. Maes could make phone calls the

following day. Ms. Shields remained at her dispatcher station, at some point placing a

call to San Luis Valley Behavioral Health[2] to obtain care for Mr. Maes, although

Ms. Shields did not recall why she made the call or whether she was contacting a mental

health or detox facility. She testified that no one answered her call, and she did not leave

a message at the facility. While Captain Wilson testified that he was not aware of any

---

[1] Although Captain Wilson originally testified that he became aware of Mr. Maes banging his head against the wall only after the fact, he later conceded that he saw Mr. Maes hit his head once, and Ms. Shields testified that she overheard a group, including Captain Wilson, discuss the fact that Mr. Maes was hitting his head.

At oral argument, Ms. Lieberenz asserted that Captain Wilson saw Mr. Maes strike his head against the wall multiple times. Because our holding remains the same regardless of whether Captain Wilson saw Mr. Maes strike his head once or multiple times, we need not resolve this factual dispute.

[2] The district court explained that the record reflected Ms. Shields had called San Luis Valley Behavioral Health, but Ms. Shields testified she did not recall exactly who she called.

attempt to call a mental health facility at that time, Ms. Shields testified that she told Captain Wilson the mental health facility did not answer her call.

At some point while she was at the SCJ, Deputy Wells, who was not assigned to the SCJ and was not within Captain Wilson's chain-of-command, contacted her road supervisor, Corporal Steven Hansen. During that conversation, Corporal Hansen confirmed that Mr. Maes needed to be put on suicide watch, a mental health provider needed to be notified, and Mr. Maes could not be released until he was evaluated by a mental health provider. Deputy Wells testified that she informed Captain Wilson of this discussion, although Captain Wilson testified that he was not aware of the contents of Deputy Wells's conversation with Corporal Hansen.

At approximately 10:22 p.m., fourteen minutes after his conversation with Mr. Macias, Mr. Maes committed suicide using the privacy curtain in his cell. An official found Mr. Maes's body the following morning.

### B.    Procedural History

Ms. Lieberenz sued Captain Wilson, Deputy Wells, and Ms. Shields, along with other entities and individuals, as a personal representative on behalf of Mr. Maes's estate.[3] Relevant to this appeal, Ms. Lieberenz brought four § 1983 claims for violations of the Fourteenth Amendment based on the Defendants' deliberate indifference to

---

[3] Mr. Lieberenz also brought these claims in her individual capacity, but the district court dismissed her first ten counts with respect to any claims or damages alleged by Ms. Lieberenz as an individual. Thus, Ms. Lieberenz's claims at issue on appeal are all brought on behalf of Mr. Maes's estate.

Mr. Maes's serious medical needs, alleging individual liability and supervisory liability against Captain Wilson in his individual capacity, individual liability against Deputy Wells in her individual capacity, and individual liability against Ms. Shields in her individual capacity.

Captain Wilson, Deputy Wells, and Ms. Shields all moved for summary judgment, invoking the doctrine of qualified immunity. With respect to Captain Wilson, the district court concluded there was a genuine issue of material fact as to whether he "kn[ew] of and disregard[ed] an excessive risk to [Mr. Maes's] health or safety." App. Vol. III at 79 (alterations in original) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). The court then considered whether Captain Wilson had violated clearly established law, concluding,

> despite the lack of a Supreme Court or Tenth Circuit case that has facts on all fours, it was clearly established as of November 2019 that prison officials are deliberately indifferent if they fail to take reasonable steps to protect a pretrial detainee or an inmate from suicide when they have subjective knowledge that person is a substantial suicide risk.

*Id.* at 82. The court concluded that only a jury could resolve whether Captain Wilson "recklessly disregarded a substantial risk of suicide in light of these events," as this assessment "requires an evaluation of the credibility of the witnesses and the weighing of evidence." *Id.* at 83. Thus, the court declined to grant Captain Wilson qualified immunity.

The district court then evaluated the supervisory liability claim against Captain Wilson, finding that Ms. Lieberenz had demonstrated an affirmative link between Captain Wilson's personal participation and the alleged constitutional deprivation. *Id.* at 84. The court noted "[Captain] Wilson is responsible for overseeing the SCJ, and was

present at the SCJ on the night of Mr. Maes's death." *Id.* Thus, the district court

concluded that he personally participated in the alleged constitutional deprivation and

acted with the state of mind required to establish the deprivation.

Next, the district court considered the claims against Ms. Shields and Deputy

Wells, eventually concluding that both individuals were entitled to qualified immunity.

Captain Wilson timely appealed, asserting that he is entitled to qualified

immunity. Ms. Lieberenz responded and timely cross appealed, arguing that the district

court erred in granting summary judgment for Deputy Wells and Ms. Shields.

## II.        DISCUSSION

Captain Wilson asserts on appeal that he is entitled to qualified immunity from

Ms. Lieberenz's claims against him in both his individual and supervisory roles. Because

the district court properly denied Captain Wilson's motion for summary judgment

asserting qualified immunity, we affirm. Ms. Lieberenz also cross appeals the district

court's grant of qualified immunity to Deputy Wells and Ms. Shields. We decline to

exercise pendent appellate jurisdiction over her cross appeal.

### A.        *Standard of Review*

We have jurisdiction to consider Captain Wilson's appeal of the district court's

denial of qualified immunity pursuant to the collateral order doctrine. *Fogarty v.

Gallegos*, 523 F.3d 1147, 1154 (10th Cir. 2008) ("[W]e have interlocutory jurisdiction

only over the district court's denial of qualified immunity . . . ."). In this interlocutory

posture, however, we have jurisdiction "only [t]o the extent [the] appeal turns on an

abstract issue of law." *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016) (alterations

in original) (internal quotation marks omitted). We generally lack jurisdiction to review factual disputes, including the district court's determination that the evidence could support a finding that particular conduct occurred. *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1162 (10th Cir. 2021). Accordingly, "if a district court concludes a reasonable jury could find certain specified facts in favor of the plaintiff, . . . we must usually take them as true—and do so even if our own de novo review of the record might suggest otherwise as a matter of law." *Lynch v. Barrett*, 703 F.3d 1153, 1159 (10th Cir. 2013) (quotation marks omitted).[4]

## B.    *Legal Standard*

"Government defendants sued under § 1983 in their individual capacities have qualified immunity: 'government officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993)). Thus, "[o]nce an individual defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that

---

[4] This limitation is subject to two exceptions: if the district court does not "identify the particular charged conduct that it deemed adequately supported by the record," and "when the 'version of events' the district court holds a reasonable jury could credit 'is blatantly contradicted by the record.'" *Lewis v. Tripp*, 604 F.3d 1221, 1225–26 (10th Cir. 2010) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Neither exception is at issue in this appeal.

the right was clearly established at the time of the defendant's unlawful conduct." *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016) (internal quotation marks omitted).

Under the first prong of the qualified immunity showing, "[c]laims based on a jail suicide are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody." *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015) (quotation marks omitted). "Thus, the[se] claims are assessed for deliberate indifference to serious medical needs." *Est. of Burgaz by & through Zommer v. Bd. of Cnty. Comm'rs for Jefferson Cnty. Colorado*, 30 F.4th 1181, 1186 (10th Cir. 2022).

Briefly stated, a claim for deliberate indifference to serious medical needs has both an objective and a subjective component.[5] *Cox*, 800 F.3d at 1240 n.3. First, "[t]he objective inquiry concerns whether the harm suffered rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause." *Id.* (internal quotation marks omitted). We have explained that death is sufficiently serious to meet this prong. *Id.* (noting in a prison-suicide case that the defendant was "wise" not to contest that the objective prong was satisfied); *see also Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (explaining that the ultimate harm of heart attack and death is "without doubt,

---

[5] We apply the same standard whether a claim for deliberate indifference to serious medical needs is brought under the Eighth Amendment or the Fourteenth Amendment. *George, on behalf of Bradshaw v. Beaver Cnty., by & through Beaver Cnty. Bd. of Comm'rs*, 32 F.4th 1246, 1256 (10th Cir. 2022) ("[W]e apply the same deliberate-indifference standard no matter which amendment provides the constitutional basis for the claim."); *Blackmon v. Sutton*, 734 F.3d 1237, 1244 (10th Cir. 2013).

sufficiently serious to meet the objective component" of the deliberate indifference standard).

Next, "[t]he subjective component is satisfied if the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and []he must also draw the inference.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . ." *Id.* at 752 (quoting *Farmer*, 511 U.S. at 842). "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* (quoting *Farmer*, 511 U.S. at 842).

"The deliberate indifference standard lies 'somewhere between the poles of negligence at one end and purpose or knowledge at the other.'" *Id.* (quoting *Farmer*, 511 U.S. at 836). "At bottom, when confronting individual-capacity § 1983 claims, our focus must always be on the *defendant*—on the . . . injury *he* inflicted or caused to be inflicted, and on *his* motives. This is because § 1983 isn't a strict liability offense." *Cox*, 800 F.3d at 1254 (alteration in original) (internal quotation marks omitted). But "[a]n inmate 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act *despite his knowledge of a substantial risk of* serious harm.'" *Mata*, 427 F.3d at 752 (quoting *Farmer*, 511 U.S. at 842). Further, "[a]n official 'would not escape liability if the evidence showed that he

11

merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Id.* (quoting *Farmer*, 511 U.S. at 843 n.8).

Under the second prong of the qualified immunity analysis, ordinarily, "[i]t is clearly established that specific conduct violates a constitutional right when Tenth Circuit or Supreme Court precedent would make it clear to every reasonable officer that such conduct is prohibited." *Perea*, 817 F.3d at 1204. In addition, the Supreme Court has held that certain conduct is so egregious that it renders "the violation . . . so obvious that our own . . . cases g[i]ve respondents fair warning that their conduct violate[s] the Constitution." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *see also Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015) ("After all, some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing."). All the same, "[t]he Supreme Court has cautioned circuit courts 'not to define clearly established law at a high level of generality,' but to focus on 'whether the violative nature of particular conduct is clearly established.'" *Perea*, 817 F.3d at 1204 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

*C.*    *Analysis*[6]

**1.    Captain Wilson's Individual Liability**

*a.    Violation of Mr. Maes's Constitutional Rights*

To carry her burden under the first prong of the qualified immunity test,

Ms. Lieberenz must show that Captain Wilson violated Mr. Maes's constitutional or

statutory rights. Ms. Lieberenz argues that Captain Wilson did so when he acted with

deliberate indifference to Mr. Maes's serious medical needs in violation of the Fourteenth

Amendment. The district court concluded that there exist genuine issues of material fact

as to whether Captain Wilson acted with deliberate indifference. In our interlocutory

posture, we do not review the district court's determinations of fact, including that the

evidence could support a finding that Captain Wilson had subjective knowledge of the

risk to Mr. Maes and that, despite this knowledge, he did not take steps to assist

---

[6] Former Corrections Officials and the Cato Institute both seek to file amicus briefs in this appeal. An amicus curie, other than the United States, its officer or agent, or a state, "may file a brief only by leave of court or if the brief states that all parties have consented to its filing[.]" Fed. R. App. P. 29(a)(2).

Former Corrections Officials submitted their brief in support of Ms. Lieberenz with the consent of all parties. We have considered this amicus brief in our resolution of this appeal. In addition, the Cato Institute filed a motion seeking leave to submit an amicus brief in support of Ms. Lieberenz, as all parties do not consent to the filing. We have granted motions for leave to file amicus briefs when the motions comply with Federal Rule of Appellate Procedure 29, the brief provides the court with useful information, and the "briefing is relevant to the disposition of the case." *New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 994 F.3d 1166, 1176 (10th Cir. 2021). The Cato Institute's amicus brief complies with Rule 29 and addresses the merits of the case. Accordingly, we grant the Cato Institute's motion for leave to file the amicus brief and have considered the brief in our resolution of this appeal.

Mr. Maes.[7] *Vette*, 989 F.3d at 1162. Thus, Ms. Lieberenz has carried her burden under the first prong.

As noted, to bring a claim for deliberate indifference to serious medical needs, Ms. Lieberenz must establish both an objective and a subjective component. First, with respect to the objective component of the deliberate indifference assessment, our precedent indicates that death is a sufficiently serious harm to meet this requirement. *See Cox*, 800 F.3d at 1240 n.3 ("Sheriff Glanz has not contested the district court's tacit conclusion that the objective prong of the deliberate-indifference standard was satisfied [in a case involving suicide]. And this is wise."). Neither party disputes that Mr. Maes's risk of suicide satisfies this prong.

---

[7] The specific questions of whether Captain Wilson knew of Mr. Maes's substantial risk of suicide and what Captain Wilson's actions were on the evening of November 16, 2019, are issues of fact outside the scope of our review. *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1162 (10th Cir. 2021) (explaining we do not review factual disputes, "including the district court's determination . . . that the evidence could support a finding that particular conduct occurred" (internal quotation marks omitted)); *Castillo v. Day*, 790 F.3d 1013, 1021 (10th Cir. 2015) ("The question of what [the defendant] subjectively knew is a question of fact."); *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005) ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways . . . ." (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994))). Although there are certain exceptions to this limit on our review, including if the district court does not "identify the particular charged conduct that it deemed adequately supported by the record," and "when the 'version of events' the district court holds a reasonable jury could credit 'is blatantly contradicted by the record,'" *Lewis*, 604 F.3d at 1225–26 (quoting *Scott*, 550 U.S. at 380), neither exception is applicable here.

Second, Ms. Lieberenz must establish that Captain Wilson was subjectively aware of the substantial risk that Mr. Maes would commit suicide.[8] "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways . . . ." *Mata*, 427 F.3d at 752 (quoting *Farmer*, 511 U.S. at 842).

The district court relied on several facts from the record in concluding there existed a dispute over Captain Wilson's subjective knowledge, including that: Captain Wilson heard Mr. Maes say "I'm trying to kill myself right now," and responded by asking "You're trying to kill yourself right now?"; Captain Wilson observed Mr. Maes striking his head against the cell wall; Captain Wilson believed Mr. Maes was eligible for treatment at a detox center; Captain Wilson thought "something more" should be done to treat Mr. Maes; and Ms. Shields called a mental health facility that night. App. Vol. III at 77. The district court also considered several disputed facts and factual inconsistencies in the record, including that the parties disputed Mr. Maes's demeanor, Deputy Wells

---

[8] At oral argument, Captain Wilson for the first time expressly asserted that there is no factual dispute over whether he had the requisite subjective knowledge of Mr. Maes's risk of suicide. But in our interlocutory posture, "if a district court concludes a reasonable jury could find certain specified facts in favor of the plaintiff, . . . we must usually take them as true—and do so even if our own de novo review of the record might suggest otherwise as a matter of law." *Lynch v. Barrett*, 703 F.3d 1153, 1159 (10th Cir. 2013) (quotation marks omitted). While this jurisdictional limitation does not apply if the district court does not "identify the particular charged conduct that it deemed adequately supported by the record," or "when the 'version of events' the district court holds a reasonable jury could credit 'is blatantly contradicted by the record,'" *Lewis v. Tripp*, 604 F.3d 1221, 1225–26 (10th Cir. 2010) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)), Captain Wilson makes no argument that either of these exceptions applies, and we also conclude that neither is relevant here.

testified that she informed Captain Wilson of her conversation with Corporal Hansen in which Corporal Hansen confirmed Mr. Maes needed to be put on suicide watch, and Ms. Shields testified she told Captain Wilson that the mental health facility did not answer when she called. In addition, the district court concluded the jury could find that, after Mr. Maes told Captain Wilson he was trying to kill himself, Captain Wilson left the area around Mr. Maes's cell and the district court did not find that Captain Wilson took any steps to protect Mr. Maes.

Based on this record, the district court concluded a reasonable jury could find that Captain Wilson was subjectively aware there was a substantial risk Mr. Maes would commit suicide and, despite this subjective awareness, did not take reasonable steps to protect Mr. Maes from suicide. *See Mata*, 427 F.3d at 751. We do not review this factual finding on interlocutory appeal. Thus, Ms. Lieberenz has carried her burden as to this first prong of the qualified immunity analysis and demonstrated a right to have a jury determine whether Captain Wilson violated Mr. Maes's constitutional rights.

b.    *Clearly Established Law*

Next, Ms. Lieberenz must establish that Mr. Maes's right was clearly established at the time of Captain Wilson's conduct. Captain Wilson argues the district court erroneously held his conduct violated clearly established law.[9] Viewing the facts in the

---

[9] Captain Wilson also argues the district court erroneously applied the sliding scale approach to the "clearly established" prong when it declined to grant him qualified immunity. Contrary to Captain Wilson's assertion, however, the district court does not appear to have relied on a sliding scale approach in finding that Captain Wilson violated Mr. Maes's clearly established rights. And regardless, we review the abstract issues of

light most favorable to Ms. Lieberenz for purposes of summary judgment, and thus inferring that Captain Wilson had subjective knowledge of Mr. Maes's substantial risk of suicide, we hold a reasonable jury could find that Captain Wilson was on notice that his conduct violated clearly established law. Our precedent on November 16, 2019, clearly established that Captain Wilson's failure to take any steps to assist Mr. Maes despite his awareness of the risk of Mr. Maes's death constituted deliberate indifference to his serious medical need. *See*, *e.g., Mata*, 427 F.3d at 749 ("[T]here is little doubt that deliberate indifference to an inmate's serious medical need is a clearly established constitutional right.").

Our decision in *Cox v. Glanz*, in which the plaintiff alleged Eighth Amendment violations regarding a detainee's suicide while in custody, clearly established that Captain Wilson's conduct violated Mr. Maes's constitutional rights. 800 F.3d at 1236. In *Cox*, the detainee had completed an intake form indicating that he was not thinking of self harm or suicide. *Id.* at 1237. Nonetheless, jail policy instructed that the detainee should be further assessed given other answers to the intake form. *Id.* The record indicated no such follow up occurred and the detainee subsequently committed suicide. *Id.* at 1237–38. We concluded that the jail administrator was entitled to qualified immunity because clearly

---

law at issue in this appeal de novo. Thus, we need not address Captain Wilson's argument and instead use this opportunity to reemphasize that "[o]ur more recent jurisprudence has shifted to consider 'obvious clarity' or 'flagrantly unlawful conduct' rather than engage in the sliding scale approach." *Shepherd v. Robbins*, 55 F.4th 810, 818 n.5 (10th Cir. 2022) (first citing *Lowe v. Raemisch*, 864 F.3d 1205, 1210–11, 1211 n.10 (10th Cir. 2017); and then citing *Contreras v. Doña Ana Cnty. Bd. of Cnty. Comm'rs*, 965 F.3d 1114, 1123 (10th Cir. 2020) (Carson, J., concurring))

established law at that time would not have put a similarly situated jail administrator "on notice that he could be held liable . . . based on a prisoner's suicide where, as here, neither he nor any identified staff member whom he supervised possessed knowledge that the particular inmate who committed suicide presented a substantial risk of taking his own life." *Id.* at 1236. In holding the administrator in *Cox* was entitled to qualified immunity, we explained that in the deliberate indifference context, "the defendant must 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference.'" *Id.* at 1248 (alteration in original) (quoting *Farmer*, 511 U.S. at 837).

Subsequently, in 2021, we clarified that "as we explained in *Cox v. Glanz*, prison officials are deliberately indifferent if they fail to take reasonable steps to protect a pre-trial detainee or an inmate from suicide when they have subjective knowledge that person is a substantial suicide risk." *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1307 (citing *Cox*, 800 F.3d at 1248–49); *see also id.* at 1310 (explaining that *Cox* articulates the principle that "prison officials are deliberately indifferent if they fail to take reasonable steps to protect a pre-trial detainee or an inmate from suicide when they have *subjective knowledge* that person is a substantial suicide risk." (citing *Cox*, 800 F.3d at 1248–49)). Although *Crane* post-dates the conduct at issue in this case, and thus cannot have clearly established that Captain Wilson's conduct violated Mr. Maes's constitutional rights in November 2019, we "ha[ve] recognized that a case decided after the incident underlying a § 1983 action can state clearly established law when that case ruled that the relevant law was clearly established as of an earlier date preceding the events in the later § 1983

18

action." *Wilkins v. City of Tulsa*, 33 F.4th 1265, 1276 n.8 (10th Cir. 2022) (quotation marks omitted).

Further, as we have explained, the district court determined that a reasonable jury could find from this record that Captain Wilson took no steps to protect Mr. Maes. Yet our precedent makes clear that Captain Wilson was obligated to do *something* when he became subjectively aware that Mr. Maes was at a substantial risk of suicide. In *Blackmon v. Sutton*, for example, we explained "the Eighth Amendment is offended not only by medical professionals who fail to treat, but also by prison officials who assume 'gate keeping' authority over prisoner access to medical professionals." 734 F.3d 1237, 1245 (10th Cir. 2013). We further noted that Supreme Court precedent makes clear that "a prisoner may satisfy the subjective component of the deliberate indifference test" by showing "that a 'gate keeping' prison official 'den[ied] or delay[ed] [him] access to medical care' in conscious disregard of a substantial risk of serious harm." *Id.* (alterations in original) (quoting *Estelle*, 429 U.S. at 104–05).

In *Mata v. Saiz*, similarly, we held that a licensed nurse practitioner acted with deliberate indifference to the plaintiff's serious medical needs when, after the plaintiff came to her complaining of chest pain, the nurse "told [the plaintiff] there was *nothing* she could do for her since the infirmary was closed" and instructed the plaintiff to return in the morning, meaning the nurse "neither administered first aid nor summoned medical assistance despite [the plaintiff's] plea for medical attention." 427 F.3d at 755. We characterized this conduct as a "complete denial of medical care" and held that the plaintiff had "raised an issue of material fact with respect to [the nurse] on the subjective

element of deliberate indifference." *Id.* at 756, 758. In a later unpublished decision, we noted "*Mata* clearly establishes that denial of access to treatment for a serious medical condition constitutes deliberate indifference," differentiating such a complete denial of care from the failure to treat a medical condition properly. *Est. of Vallina v. Petrescu*, 757 F. App'x 648, 651 (10th Cir. 2018) (unpublished). Similarly, in *Quintana v. Santa Fe County Board of Commissioners*, we explained that "it was clearly established that when a detainee has obvious and serious medical needs, ignoring those needs necessarily violates the detainee's constitutional rights." 973 F.3d 1022, 1033 (10th Cir. 2020). Based on this, we held that a police officer's "inaction in the face of [the decedent's] bloody vomiting" violated clearly established law. *Id.*

Altogether, our precedent put Captain Wilson on notice that, to the extent he had subjective knowledge of a substantial risk that Mr. Maes would commit suicide, he was obligated to do *something* to address Mr. Maes's serious medical needs. Despite this obligation, the district court determined the record could support a reasonable jury's factual finding that Captain Wilson took no steps to protect Mr. Maes. Thus, our precedent clearly established Captain Wilson's conduct constituted deliberate indifference to a serious medical need.

## 2.    Captain Wilson's Supervisory Liability

Captain Wilson also appeals the district court's denial of qualified immunity on Ms. Lieberenz's supervisory liability claim against him. He argues the district court erred in relying on its analysis of the clearly established law in the individual liability context

when reviewing this claim and instead should have conducted a fully separate analysis of the clearly established law in the supervisory context. We affirm the district court.

a.     *Violation of Mr. Maes's Constitutional Right*

"A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability." *Est. of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (quotation marks omitted). However, § 1983 "does not authorize liability under a theory of respondeat superior." *Id.* (quotation marks omitted). Thus, in the context of supervisory liability, "[t]he plaintiff . . . must show an 'affirmative link' between the supervisor and the constitutional violation." *Id.* (quotation marks omitted) This requires "more than a supervisor's mere knowledge of his subordinate's conduct." *Id.* (quotation marks omitted). "Rather, a plaintiff must satisfy three elements . . . to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation; and (3) state of mind." *Id.* (alteration in original) (internal quotation marks omitted).

With respect to the first element, personal involvement, we have explained that "even if direct participation is not necessary to satisfy this element, surely it is sufficient." *Id.* (internal quotation marks and citation omitted). The second element, causation, "requires the plaintiff to show that the defendant's alleged action(s) caused the constitutional violation by setting in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights." *Id.* (internal quotation marks omitted). Our precedent instructs that direct participation in a constitutional violation, like Captain Wilson's participation in the

21

deliberate indifference to Mr. Maes's medical needs, fulfills the first and second

requirements for supervisory liability. Specifically, in *Estate of Booker v. Gomez*, we held

that a supervising sergeant's conduct satisfied the first two elements of an "affirmative

link" based on "[o]ur earlier conclusions [in the court's individual liability analysis] that

a reasonable jury could find [the sergeant] actively participated in—and failed to

intervene and prevent—the use of excessive force." *Id.* at 435–36. Similarly, in a later

unpublished decision, *DuBois v. Brown,* we explained that "[a] supervisor's direct

participation in the relevant events is an appropriate ground for assessing liability." 666

F. App'x 721, 725 (10th Cir. 2016).

Finally, "[t]he third element requires the plaintiff to show that the defendant took

the alleged actions with the requisite state of mind, which can be no less than the mens

rea required of the subordinates to commit the underlying constitutional violation." *Est.

of Booker*, 745 F.3d at 435 (internal quotation marks and citations omitted). In the prison-

suicide context, a supervisory-liability claim "requires a *particularized* state of mind:

actual knowledge by a prison official of an individual inmate's substantial risk of

suicide." *George, on behalf of Bradshaw v. Beaver Cnty., by & through Beaver Cnty. Bd.

of Comm'rs*, 32 F.4th 1246, 1255–56 (2022) (internal quotation marks omitted). The

district court's analysis of Captain Wilson's individual liability satisfies the third

element: there is a genuine dispute of fact regarding whether Captain Wilson had actual

knowledge of Mr. Maes's substantial risk of suicide.

For the foregoing reasons, the district court did not err in holding that the facts a reasonable jury could find would suffice to show that Captain Wilson's conduct as a supervisor constituted deliberate indifference to Mr. Maes's serious medical needs.

b.    *Clearly Established Law*

The district court concluded for the same reasons articulated in its analysis of Captain Wilson's individual liability that Captain Wilson also violated clearly established law in his role as a supervisor. Because the district court determined a reasonable jury could conclude that Captain Wilson was a direct participant in the alleged violation, the court did not err in relying on the same clearly established law to deny Captain Wilson qualified immunity on this supervisory claim.

We have recognized that it is appropriate to rely on the same precedent to hold that an official violated clearly established law as both an individual and as a supervisor when the official directly participated in the violation as an individual. Specifically, in *Booker*, we considered claims that a group of officials had used excessive force and failed to provide immediate medical care to a pretrial detainee. 745 F.3d at 416. Of relevance, a supervising sergeant directly participated in the excessive use of force. *Id.* at 422. We concluded the sergeant was not entitled to qualified immunity as an individual for her excessive use of force or her failure to provide medical care. *Id.* at 429, 434. We then considered the sergeant's *supervisory* liability, concluding that the sergeant's conduct could be affirmatively linked to the constitutional violation, as she had actively participated in—and failed to intervene or prevent—said violation. *Id.* at 436. We further explained that "our conclusion regarding clearly established law [in the individual

23

liability context] also precludes summary judgment on this claim." *Id.* (internal citation omitted) (citing Martin A. Schwartz, *Section 1983 Litigation Claims & Defenses*, § 7.19[E] (2014) ("Under the holding in *Iqbal* that a supervisory official may be held liable under § 1983 only for his or her unconstitutional conduct, there is no longer any need to contemplate whether qualified immunity as applied to supervisory officials requires special or separate consideration.")).

Similarly, the district court determined the record in this case could support a reasonable jury's finding that Captain Wilson was a direct participant in the violation of Mr. Maes's Fourteenth Amendment rights. Thus, the district court did not err in holding, based on its conclusion that Captain Wilson violated clearly established law as an individual, that Captain Wilson violated clearly established law as a supervisor. We accordingly affirm the district court's order denying Captain Wilson qualified immunity.

**3.    Deputy Wells's and Ms. Shields's Qualified Immunity**

We decline to exercise pendent appellate jurisdiction over Ms. Lieberenz's cross appeal in which she asks that we reverse the district court's grant of qualified immunity to Deputy Wells and Ms. Shields. "Pendent appellate jurisdiction allows us to exercise jurisdiction over an otherwise nonfinal and nonappealable lower court decision [if it] overlaps with an appealable decision," meaning the appealable and nonappealable decisions are "inextricably intertwined." *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1171 (10th Cir. 2022), *cert. denied sub nom. Anderson v. Calder*, 143 S. Ct. 2658 (2023) (quotation marks omitted) (alterations in original). "Pendent appellate jurisdiction is a matter of discretion, not of right." *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994).

Such an extension of our jurisdiction is generally disfavored, *Moore v. City of Wynnewood*, 57 F.3d 924, 929 (10th Cir. 1995), "[a]nd we must exercise this discretion sparingly," *Paugh*, 47 F.4th at 1171. The party seeking pendent jurisdiction has the burden to "support [an] assertion that we may exercise [it]." *Cummings v. Dean*, 913 F.3d 1227, 1235 (10th Cir. 2019).

A pendent appellate claim is "inextricably intertwined" with a reviewable claim on collateral appeal "only if the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal—that is, when the appellate resolution of the collateral appeal *necessarily* resolves the pendent claim as well." *Moore*, 57 F.3d at 930; *United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1114 (10th Cir. 1999) ("We have further interpreted 'inextricably intertwined' to include only situations where the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal—that is, where the appellate resolution of the collateral appeal *necessarily* resolves the pendent claim as well." (internal quotation marks omitted)).

Our review of Captain Wilson's entitlement to qualified immunity as an individual and as a supervisor does not require that we resolve Deputy Wells's or Ms. Shields's entitlement to qualified immunity. Because Captain Wilson, Deputy Wells, and Ms. Shields had different interactions with Mr. Maes, held different positions, and took different actions (or failed to act) in response to Mr. Maes's behavior, our determination of whether Captain Wilson's conduct constituted deliberate indifference and whether his conduct violated clearly established law does not require that we resolve the questions of

25

Ms. Shields's and Deputy Wells' entitlement to qualified immunity. Similarly, although Captain Wilson's supervisory liability turns on Ms. Lieberenz's ability to show that Captain Wilson's subordinate(s) violated Mr. Maes's constitutional rights, *Marin v. King*, 720 F. App'x 923, 941–42 (10th Cir. 2018) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013)), resolution of Captain Wilson's entitlement to qualified immunity in this appeal does not require that we determine whether Deputy Wells or Ms. Shields in particular violated Mr. Maes's constitutional rights, nor does it require that we determine whether Deputy Wells's or Mr. Shields's conduct violated clearly established law.

Our resolution of this appeal with respect to the individual and supervisory liability claims against Captain Wilson does not "*necessarily* resolve[] the pendent claim[s] as well." *Moore*, 57 F.3d at 930. We therefore decline to exercise pendent appellate jurisdiction and dismiss Ms. Lieberenz's cross appeal for lack of jurisdiction.

### III.    CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Captain Wilson's Motion for Summary Judgment and DISMISS Ms. Lieberenz's cross appeal, No. 23-1075, for lack of jurisdiction. Further, we GRANT the Cato Institute's Motion for

Leave to File Brief as Amicus Curiae in Support of Appellee/Cross-Appellant Sarah Lieberenz.

Entered for the Court


Carolyn B. McHugh
Circuit Judge